[No. 23858–2–I.   Division One.   August 27, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. ARTHUR
OSBORN, *Appellant.*

*Arthur Osborn,* pro se, and *Patricia Novotny* of *Washington Appellate Defender Association,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *Seth Aaron Fine* and *Diane Hess Taylor, Deputies,* for respondent.

WINSOR, J.—Arthur Osborn appeals a jury verdict convicting him of three counts of second degree statutory rape, three counts of indecent liberties and one count of second degree incest. We affirm.

In 1988, Osborn was charged with sexually abusing K., his stepdaughter. Prior to trial, the defense moved in limine to exclude the testimony of three witnesses, all of whom were to testify regarding statements made by K. disclosing abuse by Osborn. The trial court provisionally granted the motion, but provided that the prosecutor could seek to elicit such testimony after making a specific offer of proof.

At trial, both K. and her mother testified. During a brief cross examination of K., defense counsel attempted to show that K. disliked Osborn. She denied disliking him and stated only that she felt sorry for him. The defense asked her no other questions.

Cross examination of K.'s mother was much more extensive. Defense counsel asked questions centering on her marital problems with the defendant. The testimony established that K.'s mother kicked Osborn out of the house on February 12, 1988, after the couple had a big fight over money and Osborn's seeing other women.

Following the testimony of K.'s mother, the court admitted the provisionally excluded testimony under ER 801(d)(1)(ii), as prior consistent statements offered to rebut a charge of recent fabrication. Each of the three witnesses then testified that K. had disclosed sexual abuse either during or previous to the summer of 1987. Following this testimony, the State rested. Osborn then testified in his own behalf, denying any sexual misconduct with K.

In closing argument, defense counsel made two arguments concerning K.'s possible motives to fabricate the allegations of sexual abuse. He first argued that K. and her mother conspired to fabricate the tale of sexual abuse to retaliate against Osborn for distancing himself from the family in the last few months before he moved out, and for withdrawing financial support from the family. He also argued that K. decided to fabricate this story as a way of getting out of the house, and for that reason made the statements disclosing abuse to which the three witnesses testified.[1]

---

[1]Defense counsel stated:

"Now what do we know about [K.]? We know that [K.]'s been something of a problem, and we know that not only from that [K.'s mother] and Art Osborn, but we also know that from [witness 1], that she's had a lot of social problems. And let's assume that [K.] wants out of the house. She's just waiting until she turns 18 and can leave. She's 17 years old. She goes to high school.

"This is the era where schools and every place else is telling people about good touching and bad touching and don't let this happen to you. And it's in the newspapers and on television, and it's everywhere. What better idea than to say, 'Well, if I really wanted out, all I've gotta do is say my stepfather's molesting me. That's all I've gotta do, and all my problems are over. I can go out with who I want. I can do what I want. I can stay on at home. I don't have to follow rules. I can do what I want.'

"And she toys with this idea. But when she talks to [witnesses 2 and 3], when she talks to [witness 1], she doesn't like—Maybe that's a little too drastic. But

The jury convicted Osborn of all seven counts. Osborn appeals, arguing that the trial court erred by admitting the three witnesses' testimony under ER 801(d)(1)(ii) as prior consistent statements. Specifically, he contends that the motive to fabricate the sexual abuse accusation was in existence at the time the statements to the three witnesses were made; thus, the admitted testimony merely served to improperly bolster K.'s trial testimony.

ER 801(d)(1) provides that statements are not hearsay if the declarant testifies at trial, is subject to cross examination concerning the statement, and the statement is consistent with his or her testimony and offered to rebut a charge of recent fabrication or improper motive. *See State v. Dictado,* 102 Wn.2d 277, 289, 687 P.2d 172 (1984), *abrogation on other grounds recognized in State v. Short,* 113 Wn.2d 35, 40, 775 P.2d 458 (1989). Prior out–of–court statements consistent with the declarant's testimony are not admissible simply to reinforce or bolster the testimony. *State v. Purdom,* 106 Wn.2d 745, 750, 725 P.2d 622 (1986); *State v. McDaniel,* 37 Wn. App. 768, 771, 683 P.2d 231 (1984), *appeal dismissed,* 103 Wn.2d 1040 (1985). That is because repetition is not a valid test for veracity. *State v. Harper,* 35 Wn. App. 855, 857, 670 P.2d 296 (1983), *review denied,* 100 Wn.2d 1035 (1984). Judge Weinstein explains the rationale of the rule succinctly:

> Evidence which counteracts a suggestion that the witness changed his story in response to some threat or scheme or bribe by showing that his story was the same prior to the external pressure is highly relevant in shedding light on the witness' credibility. Evidence which merely shows that the witness said the same thing on other occasions when his motive was the same does not have much probative force "for the simple reason that mere repetition does not imply veracity."

there it is. There's the idea. She has been thinking of this, maybe for another reason. So when Art moves out of the house and her mom sudden[ly] is without money, which means [K.] has no money, where there's no food, where there's nothing, 'Hey, Mom, I can help you out.' What's the worst thing he could be accused of, the absolute worst thing? Let's get Art, because [K.'s mother] thinks that Art's going out on her."

(Footnotes omitted.) 4 J. Weinstein & M. Berger, *Evidence* ¶ 801(d)(1)(B)[01], at 801–150, 801–151 (1988). Thus, it follows that "[i]n order for a statement to be admissible under ER 801(d)(1)(ii) for the purpose of counteracting a suggestion of fabrication, the statement must have been made *prior* to the events which gave rise to the inference of fabrication." *State v. Stark*, 48 Wn. App. 245, 249, 738 P.2d 684, *review denied*, 109 Wn.2d 1003 (1987).

▇ In order to determine whether these statements were properly admitted, we must examine both when the proffered motive to fabricate arose, and the sufficiency of the State's offer of proof. The State, as proponent of admission of the prior consistent statement, must demonstrate that it was made before the time that the supposed motive to falsify arose. *United States v. Quinto*, 582 F.2d 224, 234, 47 A.L.R. Fed. 621 (2d Cir. 1978). Admission of evidence under ER 801(d)(1)(ii) is a discretionary decision by the trial court, subject to reversal only if manifest abuse of discretion is shown. *Dictado*, 102 Wn.2d at 290.

The trial court admitted the testimony on the basis that the motive to falsify arose when Osborn left home in February 1988. If this were the case, then the statements were properly admitted because they were made prior to February 1988: all the witnesses testified that K. made these statements in the spring and summer of 1987.

In closing argument, however, defense counsel argued that K. had two motives to falsify: (1) because she wanted to get out of the house; and (2) because she wanted to help her mother retaliate against Osborn for leaving home. While under the latter theory the statements would be admissible, under the former, they would not be admissible because according to that theory, the motive to fabricate arose before K. made the statements.

Few cases have addressed the problem of deciding when the actual motive to falsify arose. One federal case is instructive. In *United States v. Baron*, 602 F.2d 1248 (7th Cir.), *cert. denied*, 444 U.S. 967 (1979), the defendant was convicted of solicitation of bribes, defrauding by wire and

filing a false income tax return. The trial court admitted as prior consistent statements memoranda written by a person who bribed the defendant. The memoranda were written after each payment was made. The defense theory on appeal was that the motive to falsify was formed at the very beginning of the scheme, and the memoranda were simply part of that plan; thus, the memoranda were irrelevant to refute the defense's allegation of improper motive.

The Seventh Circuit noted that the question of whether the motive to falsify existed at the time the memoranda were prepared was a factual one for the jury. 602 F.2d at 1253. The court found that from the line of cross examination pursued at trial, the jury may well have inferred that defense counsel was suggesting that the motive to fabricate arose after the memoranda were written. Accordingly, it upheld the admissibility of the memoranda under Fed. R. Evid. 801(d)(1)(B).

█ In admitting the evidence in this case, the trial court relied on the cross examination of the two key state witnesses, K. and her mother. Although defense counsel questioned K. on her general feelings about Osborn, he never questioned her about her desire to move out of the house. He did question K.'s mother extensively about her relationship with the defendant and specifically about the breakup of the marriage. Still, up to the point at which the evidence was admitted, there is no mention in the record of K.'s alleged desire to get out of the house as a motive to lie. It is therefore clear that similar to *Baron,* at the point in the trial when the statements were offered, defense counsel was strongly inferring that the breakup of the marriage was K.'s motivation to lie. Even if the defense did not intend that inference, that was the message the jury was likely to receive. Under those circumstances, the court did not abuse its discretion since it reasonably believed that the supposed motive to falsify arose after K. made the statements to the three witnesses. *Baron,* 602 F.2d at 1253.

■ On the sufficiency of proof question, we also agree with the trial court that the State's offer of proof was sufficient to support admission of the statements. While mere cross examination of a witness cannot justify admission of prior consistent statements, *see Dictado,* 102 Wn.2d at 290; 5B K. Tegland, Wash. Prac., *Evidence* § 342, at 54 (3d ed. 1989), where the inferences raised in cross examination are sufficient to allow counsel to argue motive to fabricate, as they were here, the statements may be admitted to rebut those inferences. *Dictado,* 102 Wn.2d at 290.

■ Further, we see no problem with the fact that the prior consistent statements of one witness (K.) were admitted to rebut inferences raised during cross examination of another witness (K.'s mother). The argument made by defense counsel was that both K. and her mother conspired to fabricate the tale of sexual abuse. Thus, either K.'s or her mother's prior consistent statement would be admissible to rebut that inference. Accordingly, we hold that when, as here, cross examination of one witness is laying the groundwork to show motive to fabricate by a second witness, the second witness' prior consistent statement may be admitted under ER 801(d)(1)(ii) to rebut the inference.

In sum, the court did not abuse its discretion in admitting the testimony of the three witnesses as prior consistent statements.[2]

---

[2]The State alternatively argues that the testimony was also admissible under the fact of complaint or "hue and cry" doctrine. The trial court did not reach this issue. We disagree with the State.

The fact of complaint doctrine is a decisional law exception to the hearsay rule allowing the State to present evidence that a rape victim complained to someone after an assault. *State v. Ferguson,* 100 Wn.2d 131, 135, 667 P.2d 68 (1983). The exception is relatively narrow and allows into evidence only the fact of the complaint, and that it was "timely made". *Ferguson,* 100 Wn.2d at 135–36. Excluded is evidence of details of the complaint, including the identity of the offender and the nature of the act. *Ferguson,* 100 Wn.2d at 136; *State v. Murley,* 35 Wn.2d 233, 237, 212 P.2d 801 (1949). The testimony is admissible for the sole purpose of rebutting the inference that the complaining witness was silent following the attack. *State v. Fleming,* 27 Wn. App. 952, 957, 621 P.2d 779 (1980), *review denied,* 95 Wn.2d 1013 (1981).

We do not believe the exception is a proper basis for admission of K.'s statements, for two reasons. First, although the cases do not discuss in detail the

The conviction is affirmed.

The remainder of this opinion has no precedential value. Therefore, it will not be published, but has been filed for public record. See RCW 2.06.040; CAR 14.

WEBSTER and FORREST, JJ., concur.

Review denied at 115 Wn.2d 1032 (1990).

requirement that the statement must be "timely made", it seems implicit that the statement must be made within a short time period subsequent to the sexual offense. The doctrine rests on the premise that a victim naturally complains promptly about offensive sexual activity and that a victim's silence makes it more likely the offense did not occur. *See Murley,* 35 Wn.2d at 237. Here there has been no showing that the complaints were "timely made".

Second, the testimony admitted revealed the identity of the perpetrator. Evidence of identity is inadmissible under the fact of complaint doctrine. *Ferguson,* 100 Wn.2d at 136.